1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   GEORGETTE G. PURNELL,              Case No.  1:19-cv-00210-KES-BAM

12              Plaintiff,              **FINDINGS AND RECOMMENDATIONS**
                                        **REGARDING DEFENDANT'S MOTION**
13        v.                            **FOR PARTIAL JUDGMENT ON THE**
                                        **PLEADINGS, MOTION FOR SANCTIONS,**
14   RT MORA #772,                      **AND MOTION FOR SUMMARY**
                                        **JUDGMENT**
15              Defendant.
                                        (Docs. 26, 29, 36)
16
                                        FOURTEEN-DAY DEADLINE
17

18        Plaintiff Georgette G. Purnell ("Plaintiff"), proceeding *pro se* and *in forma pauperis*,

19   initiated this civil action on February 13, 2019.  (Doc. 1.)  On September 20, 2021, Defendant R.

20   T. Mora ("Defendant" or "Defendant Mora") filed a motion for partial judgment on the

21   pleadings.[1]  (Doc. 26.)  That same day, Defendant also requested that the Court issue an order for

22   the redacted copy Defendant's body worn camera ("BWC") video to be filed under seal (Doc.

23   33), and filed a motion for sanctions against Plaintiff seeking $2,520 for attorney's fees.  (Doc.

24   29.)  On April 20, 2022, Defendant filed an additional motion, a motion for summary judgment,

25   on the basis that his actions were objectively reasonable, that he did not use a racial insult during

26

27   [1] Defendant's pending motions for partial judgment on the pleadings (Doc. 26), motion for
     sanctions (Doc. 29), and motion for summary judgment (Doc. 36) were referred to the
28   undersigned on May 14, 2025.  (Doc. 59.)

                                           1

the course of the arrest, and that he was protected by qualified immunity.  (Doc 36.)  Defendant's summary judgment motion was fully briefed on May 25, 2022.

Having considered the record and briefing in this matter, the Court will recommend Defendant's motion for summary judgment be GRANTED.  The Court will further recommend Defendant's motion for partial judgment on the pleadings be DENIED as moot, and Defendant's motion for sanctions be DENIED.

## BACKGROUND

### I.    Procedural Background

On February 19, 2019, Plaintiff filed her complaint naming as defendants four Fresno police officers identified by their first initial, last name, and badge number: N. Cruz, Hodge, R.T. Mora, and B. Phelps.  (Doc. 1.)  On January 10, 2020, the Court screened Plaintiff's complaint.  (Doc. 7.)  The Court found that Plaintiff's complaint failed to comply with Fed. Rule Civ. P. 8 and failed to state a cognizable claim, but granted Plaintiff leave to amend her complaint to cure the identified deficiencies to the extent she was able to do so in good faith.  (*Id.*)

On February 28, 2020, Plaintiff filed a First Amended Complaint ("FAC") purporting to bring claims for (1) excessive force by law enforcement officers under the Fourth Amendment of the U.S. Constitution; and (2) racial insults by law enforcement officers under the Fourteenth Amendment of the U.S. Constitution.  (Doc. 38 at 3, 8.)  Plaintiff requests "[c]ompensatory [d]amages according to proof: 1 Million dollars each defendant.  Punitive damages according to proof: 1 million dollars each defendant.  Additional Training for all defendants with regards to their interactions with citizens, their duty to serve and protect, and not to abuse."  (Doc. 10 at 6.)  Elsewhere in the FAC, Plaintiff indicates that "Defendants and all of them named are liable due to the Claims of violations being raised in the amount of 8 million dollars total which includes compensatory and punitive damages."  (*Id.* at 5.)

On January 5, 2021, the Court screened Plaintiff's FAC.  (Doc. 15.)  The Court issued Findings and Recommendations that the action proceed on (1) Plaintiff's Fourth Amendment claim against Defendant Mora for use of excessive force in effectuating an arrest, and (2) Plaintiff's 42 U.S.C. § 1981 claim against Defendant Mora for use of a racial insult.  The Court

1   recommended that all other claims and defendants be dismissed from this action.  On February 2,

2   2021, the District Judge issued an order adopting the Court's Findings and Recommendations.

3   (Doc. 16.)

4   **II.    Factual Allegations**

5       *A.   Undisputed Facts[2]*

6       The case arises from a traffic stop that occurred in Fresno, California on August 30, 2018.

7   At approximately 12:24 PM, Officer Cruz of the Fresno Police Department initiated contact with

8   Plaintiff and conducted a traffic stop.  (Doc. 36-3 at 14.)  While on routine patrol, Defendant

9   Mora's unit was requested to check a suspicious vehicle that was driving in the area of California

10  Ave and Lee St.  (Doc. 36-3 at 19.)  Upon arriving at the area, the officers were advised that the

11  vehicle was "circling the area and possible [sic] looking for someone."  (*Id.*)  The area was

12  "considered a high crime area with gang activity present."  (*Id.*)

13      The officers located the suspicious vehicle pulled over on the east side of Lee Street.  (*Id.*)

14  They noticed that the registration on the vehicle was expired and pulled in behind the stopped

15  vehicle.  (*Id.*)  At that time, Defendant activated his Axon BWC.  (*Id.*)  Officer Cruz approached

16  the vehicle and advised the driver—who was identified as Plaintiff—that the tags on her vehicle

17  were expired.  (Doc. 36-3 at 14.)  During the stop, Officer Cruz approached Plaintiff's vehicle

18  and questioned Plaintiff regarding her vehicle's expired registration.  (*Id.*)  In response, Plaintiff

19  attempted to produce documents from her vehicle purportedly showing that another officer had

20  recently informed her that she had six months to remedy the expired registration.  (Doc. 38 at 5.)

21  The officers prepared a citation for Plaintiff to sign.  (Doc. 36-3 at 19.)  Plaintiff did not sign the

22  citation and instead requested to speak to a supervisor.  (*Id.*)

23

24  ---

[2] *See* Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment.  (Doc. 36-

25  4.)  Plaintiff did not comply with the rules in preparing her opposition, including by failing to reproduce Defendant's Statement of Undisputed Material Facts and providing "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts, or

26  providing a statement of disputed facts.  Local Rule 260(b).  As a result, Defendant's Statement of Undisputed Material Facts is accepted except where brought into dispute by Plaintiff's verified first amended complaint and

27  portions of her opposition to the motion for summary judgment signed under penalty of perjury.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–

28  1400 (9th Cir. 1998) (same, with respect to verified motions).

Plaintiff attempted to present Defendant with the documents that showed that she had six months to remedy the expired registration.  (Doc. 10 at 8 ⁋ 1.)  When Plaintiff attempted to show Defendant the documents, he grabbed her arm, handcuffed her, and along with other officers put her into custody and had her sit in the back of the police unit.  (Doc. 36-3 at 20.)  The physical force of grabbing Plaintiff's arm lasted for approximately twenty to thirty seconds.  (Doc. 38 at 8 ⁋⁋ 1, 3.)  Subsequently, Seargent Hodge arrived on scene.  (Doc. 36-3 at 20.)  Plaintiff was then permitted to make a phone call and eventually signed the citation and was released.  (*Id.*)

Plaintiff indicated that she was feeling pain in her arm as a result of being put into custody.  (*Id.*)  Paramedics were called and Plaintiff was treated at the scene for pain in her arm. (Doc. 36-3 at 16.)  A Law Enforcement Report Form (a "Police Report") prepared by Officer David M. Desoto, dated August 30, 2018, and attached to the Defendant's motion for summary judgment as Exhibit A states that photos of Plaintiff's arm were taken at the scene, showing "slight linear depressions across her right wrist."[3]  (*Id.*)  Officer Cruz issued notices to appear to Plaintiff for driving with an expired registration in violation of California Vehicle Code § 4000(a)(1) and resisting arrest in violation of California Penal Code § 148.  The citation for resisting arrest was later dismissed.  (Doc. 38 at 8 ⁋ 5.)

### B. Disputed Facts

#### 1. *Defendant's Allegations*

Defendant Mora provides that during the course of the traffic stop, Plaintiff became upset and told Officer Cruz that she had already been cited for the expired registration.  (Doc. 36-3 at 14.)  Plaintiff claimed to have documentation showing that she had already been cited and had six months to remedy the expired registration.  (*Id.*)  She searched through her vehicle for the documentation.  (*Id.*)

Officer Cruz was then informed by non-party Officer Ruiz that Ruiz had "information from a reliable source that [Plaintiff] may have a firearm in her car" which was suspected to

---

[3] Neither party provided the photographs as evidence.  However, Plaintiff's declaration in opposition to the motion for summary judgment states photographs were taken.  (Doc. 38 at 7 ⁋ 4 ("pictures were taken of the injury done to my arm due [sic] defendant Mora's twisting it."))

belong to her brother who "is involved with gangs." (Doc. 36-3 at 19.) Officer Cruz checked Department of Motor Vehicle records and determined that the registration had been expired for more than six months. (*Id.*) The officers determined that the vehicle should be towed and Plaintiff was advised accordingly. (*Id.*) Defendant Mora's Police Report states that Plaintiff "became very upset and claimed she was being targeted and harassed." (*Id.*) The officers explained the situation "several time[s]," but Plaintiff "would not listen and became more irate." (*Id.*) She started to curse at the officers and continued to do so throughout the remainder of the incident. (*Id.* at 19-20.)

Due to the reliable report of the possibility of a gun in the vehicle, Defendant and Officer Cruz monitored Plaintiff as she removed property from the vehicle. (Doc. 36-3 at 19.) Plaintiff refused to sign the traffic citation and indicated that she wanted to speak to a sergeant. (*Id.*) Eventually, a sergeant was requested. (*Id.* at 20.) While the officers waited for a sergeant to arrive, the officers monitored Plaintiff while she "continued to remove[] property from her car and continually cursed at OFC. Cruz and myself." (*Id.*) Defendant contends that Officer Ruiz spoke to Plaintiff about the rumored firearm in her car, but that Defendant was not present while they spoke. (*Id.* at 19.) Defendant reported that Plaintiff "appeared to be attempting to draw [the officers] into a[n] argument" and remained in an "agitated" state. (*Id.* at 20.)

Defendant contends that Plaintiff "again claimed to have all the paper work allowing her to drive and I stated to her that she had not real [sic] shown us anything." (Doc. 36-3 at 20.) Defendant's Police Report then describes the altercation at issue in this action:

> Purnell the [sic] picked up what appeared to be court documents and lunged at me, shoving the paper work in my face. I instinctively stepped back and pulled the item away from my face. I then tried to control her hands to prevent her from further attempting to come at me or possible assault me. She was advised to put her hand behind her back and resisted our efforts to place her in handcuffs. At one point OFC. Cruz, OFC. Baroni and myself all struggled with Purnell to place her into custody. She was told several time [sic] to stop resisting and to cooperate. I had the [sic] pulled her right arm front [sic] her front to back in a attempt to cuff her as the other officers were struggling with her left arm. We finally overcame her resistance and placed her into handcuffs.

(*Id.*) Plaintiff was then placed in the back of a patrol vehicle. (*Id.*)

Defendant maintains that "[t]he only force used on Purnell was the amount needed to

5

1    overcome her physical resistance to being handcuffed." (*Id.*)  The vehicle was searched and no

2    weapon was found. (*Id.*)  Plaintiff's vehicle was then towed. (*Id.*)

3                          2.  *Plaintiff's Allegations*

4          Plaintiff states that throughout the traffic stop she "never became agitated" and was never

5    "disrespectful to defendant Mora, and did absolutely nothing at all, much less said anything to

6    provoke such action by defendant Mora." (Doc. 38 at 7 ⁋ 2; 9-10.)

7          Plaintiff alleges that when she attempted to show Defendant the documents, Defendant

8    "viciously" knocked her documents from her hands and used a racial slur, indicating that he did

9    not want to see Plaintiff's documents. (*Id.* at 8 ⁋ 8 ("Nigger, I don't want to see anything from

10   you")).  Plaintiff alleges that Defendant then grabbed her arm "for no apparent reason at all" and

11   "viciously twisted it to the point of . . . excruciating pain[]" and Plaintiff cried out.  She alleges

12   that "the whole ordeal [ ] lasted for approximately 20 to 30 seconds as I was crying out in pain

13   from Defendant Mora twisting my arm for no apparent reason at all." (*Id.* at 7 ⁋ 3.)  Officers

14   Cruz, Phelps, and Hodge, as well as non-defendant Officer Ruiz, were present during these events

15   and did not deescalate or stop the incident. (*Id.* at 7 ⁋ 3.)  She contends that the racial insult,

16   "coupled with the knocking of the documents from [Plaintiff's] hands" and "the twisting of the

17   arm" was "wilful [sic], and motivated by hatred by defendant of a protected class of people to

18   whom plaintiff belonged: A race of black people." (*Id.* at 9 ⁋ 9.)

19         Plaintiff states that she continues to feel pain in her arm and has also experiences sleepless

20   nights and loss of appetite since the incident. (Doc. 36-3 at 26.)  After the incident, Plaintiff also

21   filed an administrative complaint with the Fresno Police Department, stating that her arm was

22   "viciously twisted by Defendant" in the course of being put into custody, which still hurts as of

23   the time of filing the administrative complaint. (Doc. 36-3.)

24                              **LEGAL STANDARD**

25   **I.    Summary Judgment**

26         Summary judgment is appropriate when "there is no genuine dispute as to any material

27   fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is

28   "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

1    *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome

2    of the suit under the governing law."  *Id.*

3         The party seeking summary judgment "always bears the initial responsibility of informing

4    the district court of the basis for its motion, and identifying those portions of the pleadings,

5    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

6    which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

7    *Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  The exact nature of this

8    responsibility, however, varies depending on whether the issue on which summary judgment is

9    sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.

10   *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will

11   have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact

12   could find other than for the moving party."  *Id.* (citing *Celotex*, 477 U.S. at 323).  In contrast, if

13   the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by

14   pointing out that there is an absence of evidence to support the nonmoving party's case."  *Id.*

15        If the movant satisfies its initial burden, the nonmoving party must go beyond the

16   allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

17   evidence from which a jury could find in his favor."  *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th

18   Cir. 2009) (emphasis omitted).  In this case, summary judgment is appropriate "only if, taking the

19   facts in the light most favorable to [Plaintiff], a reasonable jury could not find that 'the officer's

20   conduct violated a constitutional right.'"  *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1160

21   (9th Cir. 2011) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

22        In resolving a summary judgment motion, "the court does not make credibility

23   determinations or weigh conflicting evidence."  *Soremekun*, 509 F.3d at 984.  Instead, "[t]he

24   evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

25   in [its] favor." *Anderson*, 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the

26   nonmoving party must produce a factual predicate from which the inference may reasonably be

27   drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

28   810 F.2d 898 (9th Cir. 1987).  "Conclusory, speculative testimony in affidavits and moving

1   papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*,

2   509 F.3d at 984.

3   **II.    Partial Judgment on the Pleadings**

4        Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but

5   early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ.

6   P. 12(c).  A party moving under Rule 12(c) must meet the same standard as if moving under Rule

7   12(b).  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir.

8   2011).  On a Rule 12(c) motion, the Court must "accept the facts as pled by the nonmovant." *Id.*

9   at 1053.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

10  court to draw the reasonable inference that the defendant is liable for the misconduct

11  alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12  **III.   Rule 11 Sanctions**

13       Federal Rule of Civil Procedure 11 "provides for the imposition of sanctions when a filing

14  is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper

15  purpose." *Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997).  "Frivolous

16  filings are those that are both baseless and made without a reasonable and competent inquiry."

17  *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997).  "The test for whether Rule 11 is violated

18  does not require a finding of subjective bad faith by the attorney or unrepresented party."

19  *McMahon v. Pier 39 Ltd. P'ship*, No. C03-00251 CRB, 2003 WL 22939233, at *6 (N.D. Cal.

20  Dec. 5, 2003).  Individuals proceeding in *pro se* are bound by the Court's Local Rules just the

21  same as licensed attorneys.  L.R. 183 ("Any individual representing himself or herself without an

22  attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other

23  applicable law. All obligations placed on counsel' by these Rules apply to individuals appearing

24  *in propria persona*.").

25  ///

26  ///

27

28

1

## DISCUSSION[4]

2

**I.    Defendant's Body Worn Camera Video**

3

*A. Description of Body Worn Camera Video*

4    As evidentiary support for Defendant's motion, Defendant Mora submits relevant portions

5    of video clips from other officers and the video taken from Defendant's BWC camera of the

6    incident.[5]  (Doc. 28, lodging flash drive; Doc. 36-2 ¶ 2.)  The Court has reviewed the submitted

7    evidence and summarizes the pertinent parts.

8    Defendant's BWC video begins with Plaintiff standing at the rear of her car, searching

9    through the trunk of her vehicle, with the Defendant standing on the curb.  Plaintiff is in view of

10    the camera.  Defendant is attempting to explain the citation to Plaintiff.  Plaintiff is in an agitated

11    state and tossing items around in her trunk and is repeatedly screaming profanities at the officers

12    for an extended period of time.  Defendant stays on the curb and does not engage Plaintiff as she

13    continuously yells profanities at Defendant and other officers.  Defendant indicates that Plaintiff

14    has not shown him anything that demonstrates that she has additional time to remedy her expired

15    registration.  (Doc. 36-3 at 88, ll. 19-20) ("That doesn't mean nothing.")  As Plaintiff continues to

16    yell profanities at Defendant, Defendant tells Plaintiff, "you can say all you want, just stay over

17    there," indicating by the trunk of her car.

18    Plaintiff then grabs some papers near the top of her trunk and lunges at Defendant with

19    what looks like an open book of papers.  She thrusts the documents at Defendant within inches of

20    Defendant's face and apparently blocking his face.  When Plaintiff lunges at Defendant, in

21

22    [4] In arriving at these findings and recommendations, the Court carefully reviewed and considered

23    all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference

24    to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed

25    and considered the evidence it deemed admissible, material, and appropriate.

26    [5] Defendant submitted a flash drive containing the BWC video of the incident.  (Doc. 36-2 ¶ 2.) Defendant also submitted a hyperlink to six video clips of the day of the incident.  (Doc. 36-3,

27    Exhibit D at 57.)  The Court tried multiple times to view the clips via the hyperlink, but the hyperlink is inoperable.  Defendant also submits transcripts of the six video clips.  (Doc. 36-3,

28    Exhibit E-J).  The Court has reviewed all of the available evidence.

response, Defendant pushes the papers out of his face and to the ground, "saying don't do that, don't do that." Defendant instructs Plaintiff not to put any papers in his face. (Doc. 36-3 at 88 ll. 22, 24) ("Don't put that in my face," "Don't do that."); Doc. 28, flash drive 4:35-5:00.) Plaintiff says "I'm showing you," and walks up on the curb, near defendant, to get the papers that had fallen. At this point, another officer grabs Plaintiff's left arm and Defendant grabs Plaintiff's right arm. Her arms are turned to her back such that Plaintiff is facing away from Defendant. Defendant holds her arms firm behind her by also grabbing her elbow (straight arms her) and instructs her not to resist. With her arms straight behind her, Plaintiff is walked towards the patrol car. Plaintiff is screaming at Defendant. She is walking but not complying with the officer. At the patrol car, Defendant bends her right arm, so he can handcuff her, at which point, Plaintiff screams in pain that he is twisting her arm. He handcuffs her, and along with other officers, puts Plaintiff into custody and in the back of the police unit. (Doc. 36-3 at 20; flash drive at 5:17-5:30.) Throughout the arrest, Defendant instructs Plaintiff not to resist. (Doc. 36-3 at 89, ll. 17, 24-25) ("Stop, stop. Stop resisting," "This is what I need you to do. Just relax.") The BWC shows that Plaintiff is non-compliant with Defendant's instructions by screaming and yelling. At this point, Defendant disengages while Plaintiff continues to curse and yell at the officers.

### *B.  Plaintiff's Challenge to the Body Worn Camera Video*

Plaintiff challenges the BWC video, asserting that the video "did not convey the correct version of the incident." (Doc. 38 at 3.) However, Plaintiff fails to submit any competent evidence to demonstrate how or the extent to which the video was "incorrect." In her Opposition brief, Plaintiff argues that the video was altered:

> For the record, the law regarding summary judgment motions does not require any party to disclose trial strategies to prove their case. All trial strategies are clearly to be executed at trial. That being said, plaintiff will not disclose her strategy with regards to proving defendant's evidence was tampered with. This is a clear matter for a jury to decide. Here, this court's duty is limited to whether there are specific facts showing genuine issues of material facts in dispute. ANDERSON, 477 US at 248.

(*Id.* at 4.)

The Court can consider police video footage when deciding a summary judgment motion to determine whether a party is entitled to summary judgment on an excessive force claim. *Uzun*

1   *v. City of Santa Monica*, 54 F.4th 595, 596 (9th Cir. 2022); *Stakey v. O'Brien*, No. 1:22-CV-

2   00513-AKB, 2025 WL 461403, at *9 (D. Idaho 2025) ("The Court need not credit Stakey's

3   allegation on this point because it is blatantly contradicted by the [bodycam footage]").  "When

4   opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

5   that no reasonable jury could believe it, a court should not adopt that version of the facts for

6   purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380

7   (2007).  On summary judgment the Court does not have to "accept a version of events that the

8   record, such as an unchallenged video recording of the incident, quite clearly contradicts."

9   *Seidner v. de Vries*, 39 F.4th 591, 595 (9th Cir. 2022) (internal quotation marks and citation

10  omitted).

11      Here, Plaintiff offers no competent evidence that the video was altered.  Plaintiff presents

12  her recollection of events in her declaration, but does not present evidence that the video itself

13  was tampered with, beyond a conclusory statement that the video "did not convey the correct

14  version of the incident."  (Doc. 38 at 3.)  Plaintiff does not present any evidence of how the video

15  was altered, either within the video or what mechanism was used to alter the video.  Her

16  speculation that the video was altered is insufficient to raise an issue of fact.[6]

17      Even viewing the facts in the light most favorable to Plaintiff, the Court will not deny

18  summary judgment solely on the mere possibility that Plaintiff's unsupported allegation that the

19  video was altered is correct.  *Scott*, 550 U.S. at 380; *Hernandez v. Town of Gilbert*, 989 F.3d 739,

20  746 (9th Cir. 2021) ("While we view the facts in the light most favorable to the non-moving party

21  at the summary judgment stage, we are not required to accept a non-movant's version of events

22  when it is 'clearly contradict[ed]' by a video in the record."  (citing *Scott*, 550 U.S. at 378-80)).

23  While the Court understands that Plaintiff was not recording the events contemporaneously, her

24  _____

25  [6] The Court cannot accept Plaintiff's version of events when her version is diametrically opposed
    to the events as they played out on the BWC video.  Plaintiff contends that throughout the traffic

26  stop she "never became agitated" and was never "disrespectful to defendant Mora, and did
    absolutely nothing at all, much less said anything to provoke such action by defendant Mora."

27  (Doc. 38 at 7 ¶ 2; 9-10.)  The BWC video, however, shows something completely different.
    Plaintiff is yelling and cursing at officers, is clearly agitated and upset, and nearly hostile to the

28  officers.

1    conclusory assertion that the video was altered is insufficient to establish a genuine issue of

2    material fact.  The party opposing summary judgment must show that there is a *genuine* issue of

3    *material* fact.  *Anderson*, 477 U.S. at 247–48.  A dispute about a material fact is genuine only "if

4    the *evidence* is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

5    (emphasis added).

6        Plaintiff argues that the instant case is distinguishable from *Scott v. Harris* and that the

7    Court should not apply the *Scott* rule here because (1) Plaintiff does dispute the authenticity of the

8    video, and (2) Defendant has a motive to fabricate the video.  (Doc. 38 at 4 ("Two reasons as to

9    why this case is inapposite: (a) plaintiff therein never disputed the video" and (b) defendant's

10   evidence is "self serving")).  The Ninth Circuit has held that even where a plaintiff challenges the

11   validity of the defendant's body camera footage on a summary judgment motion, the Court may

12   still grant summary judgment where, as here, the plaintiff "presented no evidence" that the

13   evidence was falsified.  *Hunt v. City of Boulder City*, 799 F. App'x 533, 535 (9th Cir. 2020)

14   (affirming the district court's grant of summary judgment where plaintiff has presented no

15   evidence that a police report or dash-cam were falsified).

16       It is not enough just to dispute the authenticity of the video with a conclusory allegation.

17   *Taylor v. List*, 880 F.2d 1040, 1045–46 (9th Cir. 1989) ("A summary judgment motion cannot be

18   defeated by relying solely on conclusory allegations unsupported by factual data.")  Nor may

19   Plaintiff simply assert that facts are in dispute.  Plaintiff failed to identify with "reasonable

20   particularity" any evidence that precludes summary judgment.  *Redick v. Lowe's Home Centers,*

21   *LLC*, No. 1:21-CV-00358-SAB, 2022 WL 17363476, at *6 (E.D. Cal. Dec. 1, 2022) (granting

22   defendant's motion for summary judgment where plaintiff purported defendant had falsified

23   police reports but proffered only conclusory allegations unsupported by sufficient evidence).

24   Furthermore, Plaintiff must present more than "some metaphysical doubt" as to the veracity of the

25   video.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the

26   moving party has carried its burden under Rule 56[ ], its opponent must do more than simply

27   show that there is some metaphysical doubt as to the material facts.") (internal citation omitted).

28   Accordingly, "[w]here the record taken as a whole could not lead a rational trier of fact to find for

1   the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal

2   quotation marks and citation omitted).  And while all inferences are to be drawn in favor of the

3   non-moving party, the non-moving party must still produce a factual predicate from which the

4   inference may be reasonably drawn.  *Richards*, 602 F. Supp. at 1244.

5        The Court has reviewed the BWC video provided by the Defendant.  (Doc. 28.)  The

6   video is consistent with the police reports of Officer Cruz (Doc. 36-3 at 13) and Officer Mora

7   (Doc. 36-3 at 18-20).  The video is consistent with the overall events in Plaintiff's FAC and

8   declaration, except that no racial slur occurred (as discussed *infra*) and Plaintiff's agitated state.

9   The entirety of the interaction between Plaintiff and Defendant is captured, with no missing audio

10  or video footage.  Where a plaintiff does not make a factual showing in opposition to a motion for

11  summary judgment, the Court need not hunt through the record for some genuine issue of

12  material fact.  *See Redick*, 2022 WL 17363476, at *6.  Accordingly, Plaintiff's challenge to the

13  BWC video is insufficient to raise an issue of fact.

14  **II.    Defendant's Motion for Summary Judgment**

15       Defendant moves for summary judgment on two grounds: (1) that Plaintiff's claim for

16  excessive force under 42 U.S.C. § 1983 fails because Defendant's actions were objectively

17  reasonable under the totality of the circumstances, and (2) that Plaintiff's Fourteenth Amendment

18  claim fails because Defendant did not use a racial insult.  (Doc. 36.)

19           ***A.  Fourth Amendment Unreasonable Search and Seizure Claim***

20       The FAC asserts a claim for "excessive force by law enforcement officers" under the

21  Fourth Amendment.[7]  Defendant Mora is the sole defendant.

22       The Fourth Amendment requires law enforcement officers that are making an arrest or

23  investigatory stop to use only an amount of force that is objectively reasonable in light of the

24  totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989).  To determine

25  _____

26  [7] The Findings and Recommendations (Doc. 15) adopted by Judge Drozd allows Plaintiff's
    claims against Defendant Mora for use of excessive force and for use of a racial insult in violation

27  of 42 U.S.C. § 1981.  Accordingly, the Court will consider Defendant's Fourth Amendment
    arguments.  The Court will also liberally construe a *pro se* plaintiff's pleadings.  *Erickson v.*

28  *Pardus,* 551 U.S. 89, 94 (2007).

1    whether a use of force is objectively reasonable, courts balance "the nature and quality of the

2    intrusion on the individual's Fourth Amendment interests" against the "countervailing

3    government interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

4    In assessing whether an officer's actions were objectively reasonable, the Court should consider

5    factors that include but are not limited to (1) "the severity of the crime at issue," (2) "whether the

6    suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is

7    actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "The reasonableness

8    of a particular use of force must be judged from the perspective of a reasonable officer on the

9    scene, rather than with the 20/20 vision of hindsight." *Id.* (internal quotation marks omitted).

10    Defendant contends that his actions while putting Plaintiff into custody constitutes

11    "reasonable force" under the Fourth Amendment. (Doc. 36 at 5-8.) Defendant further argues

12    that, regardless of whether the Court finds that Defendant exercised reasonable force during the

13    arrest, Defendant's actions are nonetheless entitled to qualified immunity because there was no

14    violation of Plaintiff's constitutional rights. (*Id.* at 8-11.)

15    Plaintiff contends that Defendant "knocked the papers" from her hands, "used racial

16    slurs," and "grabbed plaintiff's arm and twisted it to the point of causing excruciating pains [sic]

17    enough that medical personnel were summoned and treated plaintiff's arm." (Doc. 38 at 5.)

18    Plaintiff argues that Defendant is not entitled to qualified immunity because he used excessive

19    force in an unjustified, unprovoked, and intentional manner. (*Id.*)

20    *1. Severity of the Intrusion – Type and Amount of Force Used*

21    The first step of the excessive force analysis evaluates the severity of the intrusion on the

22    individual's Fourth Amendment rights by assessing "the quantum of force used" during the

23    investigatory stop. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). In conducting this

24    analysis the Court should consider "[t]he nature and degree of physical contact" and "the risk of

25    harm and the actual harm experienced" by the individual who is taken into custody. *Williamson*

26    *v. City of National City*, 23 F.4th 1146, 1151-52 (9th Cir. 2022) (internal citations omitted).

27    "In most cases in which we have found that officers used excessive force in the course of

28    an arrest, the force used was gratuitous or violent." *Hopson v. Alexander*, 71 F.4th 692, 705-6

14

(9th Cir. 2023) (collecting cases).  In situations of less extreme police conduct, the Ninth Circuit has found that an officer's use of force was objectively unreasonable in light of the circumstances when "the government interests at stake have been correspondingly lower."  *Id.* at 706.  *See, e.g.*, *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (where officers aggressively handcuffed a suspect who was taking out her garbage and complying with the law at the time she was arrested); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1014 (9th Cir. 2002) (where officer pointed a gun at unarmed suspect who was approaching peacefully with no dangerous circumstances apparent).

Viewing the evidence in Plaintiff's favor, the type and amount of force used by the officers in this case was appropriately minimal.  *See Donovan v. Phillips*, 685 F. App'x 611, 612 (9th Cir. 2017) (an officer using a "control hold" at a traffic stop that involved gripping the individual's wrist, pulling her arm downward, and causing her to roll onto the ground employed a "relatively minimal" and "reasonable" use of force given the circumstances).  Here, as shown in the BWC video, minimal force was used to place Plaintiff in handcuffs.  After Plaintiff ignored Defendant's order to stay on the street, Plaintiff lunged from the street onto the curb at Defendant where Defendant was standing.  Plaintiff lunged at Defendant with papers in Defendant's face to block his view of her.  Defendant pushed the papers out of his face.  Plaintiff approached Defendant again.  Defendant then took Plaintiff's right arm and another officer took her left arm. Plaintiff's arms were turned behind her, and Defendant firmly grabbed her elbow (straight armed her) to gain control.  In this posture, Plaintiff was walked a few feet to the patrol car.  She was objecting to the hold, but Plaintiff did not express any indication of pain.  Rather, she was screaming words to the effect of "why are you doing this," and cursing at the officers.  At the patrol car, Defendant bent her right arm in a turning/twisting motion behind her back, so that her right arm could join the left and be handcuffed.  At this point, Plaintiff screamed in pain when her arm was turned for handcuffing, but the video shows she in a highly agitated state and was resisting the handcuffing.

The force used was necessary to gain control and compliance and place Plaintiff in handcuffs.  The officers did not strike Plaintiff or use any extraordinary compliance techniques or weapons for the purpose of inflicting pain.  *See Williamson*, 23 F.4th at 1152 (considering similar

1    factors when analyzing the nature and degree of physical contact between the officers and the

2    plaintiff).  The only point at which Plaintiff indicated pain was when her arms were turned inward

3    towards her back to place her hands in handcuffs.  But Plaintiff was struggling, agitated, and not

4    complying.  Plaintiff's injuries—a twisted arm that could be treated with an ice pack at the

5    scene—are relatively minimal in light of her conduct.  (Docs. 36-3 at 15; 38 at 7 ¶ 1.)

6    Based on the record, the undisputed evidence shows that the nature and quality of the

7    intrusion was minimal.

8    2.  _Governmental Interest at Stake – Threat to Officers_

9    The second _Graham_ factor—the extent to which "the suspect poses an immediate threat to

10    the safety of the officers or others"—strongly favors Defendant.  _Graham,_ 490 U.S. at 396.  This

11    is the "most important single element of the three specified factors."  _Id._

12    Fresno Police officers were initially dispatched for the purposes of investigating "a

13    suspicious vehicle seen moving in the area."  (Doc. 36-3 at 45.)  The officers ultimately cited

14    Plaintiff for an expired vehicle registration.  "Traffic violations generally will not support the use

15    of a significant level of force."  _Bryan v. MacPherson_, 630 F.3d 805, 828 (9th Cir. 2010).

16    According to Defendant's Police Report, during the course of the traffic stop, Officer Cruz

17    received a call from Officer Ruiz to advise him that there was information from a "reliable

18    source" that Plaintiff may have had a firearm.  (Doc. 36-3 at 50.)  The firearm was suspected to

19    belong to Plaintiff's brother, who the officer reported "is involved with gangs."  (Doc. 36-3 at

20    50.)

21    Given this reliable information, the Court finds a basis for Defendant's belief that Plaintiff

22    may have had a firearm or that she posed an immediate threat to the safety of officers or others.

23    _See Deskins v. City of Bremerton_, 388 F. App'x 750, 752 (9th Cir. 2010) (not knowing whether

24    an individual was armed is a factor that could allow an officer to reasonably fear for her safety).

25    The possible presence of a firearm provides an "objectively reasonable basis" for the officers to

26    conclude that an individual posed an immediate threat to the safety of the officers or others.  _See_

27    _Vernon v. City of Santa Barbara_, 485 F. App'x 221, 224 (9th Cir. 2012) (dismissing an excessive

28    force claim where, among other factors, officers had information that an individual could be

16

1   armed).  Despite the fact that no firearm was ultimately determined to be in the vehicle, the

2   officers still received credible information that Plaintiff could be armed when she was parked on

3   the side of the road.  Defendant could not have known whether Plaintiff was armed until after a

4   thorough search of the vehicle.  *Lowry*, 858 F.3d at 1256 ("An officer's use of force cannot be

5   deemed excessive based on facts that he reasonably would not have known or anticipated.")

6          Even without a gun, Plaintiff became a threat to the safety of Defendant.  Plaintiff's

7   agitated state throughout the traffic stop reasonably contributed to Defendant's belief that

8   Plaintiff posed an immediate threat to the safety of the officers or others.  Defendant's Police

9   Report contends that after the officers told her that the car would be towed, Plaintiff "became

10  very upset," "would not listen and became more irate," and "started to curse" at the officers.

11  (Doc. 36-3 at 19-20.)  An individual's "volatile, erratic conduct" can be an objective factor to

12  justify an officer's fears for his safety or the safety of others, though it "does not, by itself,

13  contribute the use of significant force."  *See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir.

14  2010) (affirming the district court's ruling that an individual stopped for a traffic violation who

15  was agitated, standing outside his car, cursing, and yelling "could lead an officer to be wary.")

16  Further, Plaintiff escalated the stop by lunging at Defendant with papers which obscured

17  Defendant's vision of her.  Plaintiff lunged from the street onto the curb at Defendant where he

18  was standing.  He immediately pushed her papers away and when she approached him again, he

19  turned her right arm behind her back and walked her to the patrol vehicle.  Given Plaintiff's

20  conduct, it was reasonable for Defendant to construe Plaintiff's conduct as an immediate threat to

21  his safety.

22                     *3.  Actively Resisting*

23         The third *Graham* factor is whether Plaintiff is "actively resisting arrest or attempting to

24  evade arrest by flight."  *Graham,* 490 U.S. at 396.  The officers' reports state that Plaintiff refused

25  to sign the citation and asked for a supervisor, and that Plaintiff "resisted our efforts to place her

26  in handcuffs" even though she was "told several time [sic] to stop resisting and cooperate."  (Doc.

27  36-3 at 20.)  As explained above, Plaintiff was placed in handcuffs after she lunged at Defendant

28  and blocked his view of her.  Defendant then used minimal force to control her by straight arming

1    her right arm behind her, even as she was struggling with him.  This force is minimal.  Her arms

2    were further turned behind her to place them in handcuffs.  The BWC video shows that this force

3    was likewise minimal.  Plaintiff screamed in pain at this point, but it appears she was resisting

4    placing her hands behind her back for handcuffing.  Even in the light most favorable to Plaintiff,

5    it is undisputed that Plaintiff continually ignored the officers' requests to cooperate and not to

6    resist.  She was not in compliance with officer orders.  *See Williamson,* 23 F.4th at 1152 (holding

7    that officers employed a minimal use of force where officers pulled the handcuffed and screaming

8    protester backward out of meeting room by her arms and wrists in a nearly seated position).  To

9    the extent that Plaintiff physically resisted arrest by twisting her arms to avoid the handcuffs, such

10   resistance only lasted a brief time and the force used was minimal.  Eventually Plaintiff was

11   allowed to make a phone call, signed the citations, and was released at the scene.  (Doc. 36-3 at

12   20.)

13       "[A]n additional factor that we may consider in our *Graham* analysis is the availability of

14   alternative methods of capturing or subduing a suspect."  *Seidner*, 39 F.4th at 599 ("whether 'less

15   intrusive alternatives' were available to law enforcement").  The Ninth Circuit has held that

16   "[p]olice need not employ the least intrusive means available; they need only act within the range

17   of reasonable conduct" in capturing or subduing a suspect.  *S.R. Nehad v. Browder*, 929 F.3d

18   1125, 1138 (9th Cir. 2019).  Here, Defendant used a relatively nonintrusive method of straight-

19   arming Plaintiff and then handcuffing her.  Defendant had repeatedly attempted to deescalate the

20   situation by explaining the citation to Plaintiff.  Handcuffs are the "standard method used to

21   restrain an arrestee," and Plaintiff actively resisted being put into cuffs.  *Stakey*, 2025 WL

22   461403, at *9.  There does not appear to be any less other "clear, reasonable, and less intrusive"

23   means available to the Defendant at the time.  *Id.* There does not appear to have been a less

24   intrusive means available to Defendant at the time.  Defendant's BWC video footage shows the

25   officers used only the necessary force to handcuff Plaintiff and place her in the patrol car.

26       In considering the totality of the circumstances, and based on the record, the undisputed

27   evidence shows that Defendant and the officers had a substantial governmental interest in

28   securing Plaintiff and ensuring that there was no firearm present in the vehicle.  Plaintiff's

18

1    offense—an expired vehicle registration—is relatively minor.  While a minor offense, Plaintiff

2    was very agitated and lunged at Defendant and then resisted being put into custody.  As seen on

3    the BWC video, the force used was minimal and brief.  Because Defendant used minimal force

4    against Plaintiff under the circumstances, the force used by Defendant was "objectively

5    reasonable in light of the facts and circumstances" confronting Defendant.  *Graham*, 490 U.S. at

6    397 (internal quotation marks omitted).  Viewing the evidence in the light most favorable to

7    Plaintiff, a rational trier of fact could not find that Defendant's use of force was objectively

8    unreasonable, and therefore, summary judgment is granted in favor of Defendant.

9                             **B.  Fourteenth Amendment Claim**

10           The Fourteenth Amendment's Equal Protection Clause bars any state from "deny[ing] to

11   any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

12   "Police action sufficiently shocks the conscience, and therefore violates substantive due process,

13   if it is taken with either '(1) deliberate indifference or (2) a purpose to harm[,] unrelated to

14   legitimate law enforcement objectives.'" *S.R. Nehad*, 929 F.3d at 1139 (quoting *A.D. v.*

15   *California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013)).  An "improper motive" for law

16   enforcement objectives could include a "use of force intended to teach a suspect a lesson or get

17   even." *Id.*  (internal quotation marks and citation omitted).  "In some cases, a use of force might

18   be so grossly and unreasonably excessive that it alone could evidence a subjective purpose to

19   harm." *Id.* at 1140.  This is not such a case.

20           To the extent that Plaintiff argues that she was targeted for a traffic stop because of her

21   race, or that Defendant's actions were racially discriminatory in violation of the Fourteenth

22   Amendment, the Court finds that summary judgment is appropriate.  To succeed on her Equal

23   Protection claim, Plaintiff must prove that Defendant "acted in a discriminatory manner and that

24   the discrimination was intentional." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948

25   (9th Cir. 2003), *overruled on other grounds*, (quoting *Reese v. Jefferson Sch. Dist. No. 14J,* 208

26   F.3d 736, 740 (9th Cir. 2000)).  To avoid summary judgment, Plaintiff "must produce evidence

27   sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the]

28   decision . . . was racially motivated." *Id.* (internal quotation marks and citations omitted).

                                              19

1    Plaintiff seems to be offering evidence of the alleged racial slurs as evidence of the

2    "improper motive" of racial animus during the traffic stop.  Alternatively, Plaintiff seems to argue

3    that she was stopped on the basis of race as evidenced by her allegation that she was subjected to

4    racial insults.  Plaintiff also points to the fact that she is African American and Defendant is white

5    to support her equal protection claim.  (Doc. 38 at 8 ¶ 9.)

6    An Equal Protection claim is insufficient merely based on facts that Defendant is white

7    and Plaintiff is African American.  *See Bingham*, 341 F.3d at 948–49 ("Essentially, [Plaintiff]

8    argues that because he is African–American, the officer is white, and they disagree about the

9    reasonableness of the traffic stop, these circumstances are sufficient to raise an inference of racial

10    discrimination. We disagree.")  Plaintiff has offered no evidence of discriminatory intent except

11    the allegation that Defendant used a racial slur and her race.  However, she offers no evidence

12    that her race was the impetus for any of Defendant's conduct.  Plaintiff was approached by

13    officers for expired registration tags, following a report of a suspicious vehicle that was driving in

14    the area.  As shown in the BWC video, after they approached her, the Defendant and other

15    officers were calmly conversing with Plaintiff as she screamed obscenities at Defendant and other

16    officers.  Defendant took action only when Plaintiff lunged at him and failed to follow his

17    commands.  No racial slur is heard on the BWC video.  (Doc. 28, flash drive at 4:35-5:00.)  Thus,

18    Plaintiff offers no evidence that the stop or any conduct after the stop was motivated by racial

19    animus.

20    Further, Defendant argues that the BWC video shows that Defendant did not use a racial

21    insult at any point during the interaction with Plaintiff.  The Court agrees.  After a thorough

22    review of the BWC video, the Court did not ascertain that any racial slur was used.  As noted

23    above, Plaintiff disputes the veracity of the video but declines to provide any competent evidence

24    that the video was altered.  (Doc. 38 at 3 (stating only that the video "did not convey the correct

25    version of the incident."))  Plaintiff furthermore points directly to a moment of the racial slur.

26    (Doc. 38 at 8 ¶ 8 ("[D]efendant Mora viciously knocked these document from my hands, while

27    saying to me 'Nigger, I don't want to see anything from you'"))  But that moment is fully

28    captured in its entirety in the BWC video.  (Doc. 28, flash drive at 4:35-5:00.)  The video is

1    continuous and does not appear that any remark could have been cut out or omitted.  No racial

2    slur is uttered.  *Id.*  Plaintiff's bare allegation that the video has been altered is not sufficient

3    evidence to create a *genuine* issue of material fact to defeat summary judgment.

4         Regardless, even assuming that Defendant did utter a racial slur after she was stopped as

5    alleged, Plaintiff provides no evidence that Defendant committed discriminatory acts based on her

6    identity as an African American woman.  *See Leon v. Weiss*, No. 2:22-CV 2170 TLN KJNP, 2023

7    WL 4686805, at *5 (E.D. Cal. July 21, 2023) (dismissing equal protection claim against prison

8    physician who allegedly made a racially offensive statement due to plaintiff's failure to plead

9    facts alleging defendant committed discriminatory acts based on plaintiff's identity as a Native

10    American) and *Smith v. Hernandez*, No. 1:16-CV-01267-DAD-SAB-PC, 2017 WL 5192352, at

11    *6 (E.D. Cal. Nov. 9, 2017), *report and recommendation adopted*, No. 1:16-CV-01267-LJO-

12    SAB-PC, 2018 WL 3357433 (E.D. Cal. July 9, 2018) (dismissing equal protection claim because

13    "[t]he fact that Plaintiff is a member of a protected class and that racial slurs were uttered is

14    insufficient for the Court to infer discriminatory conduct because of Plaintiff's race") and *Cortes-*

15    *Salcedo v. City of Redding*, No. 2:20-CV-0048 DB P, 2020 WL 5569621, at *4 (E.D. Cal. Sept.

16    17, 2020) (dismissing equal protection claim based on use of racial slurs during an arrest, but

17    without other allegations showing an intent to discriminate based on membership in a protected

18    class); *see also King v. City of Eastpointe*, 86 F. App'x 790, 807 (6th Cir. 2003) (affirming

19    summary judgment in favor of defendant police officers where plaintiffs alleged one of the

20    officers uttered a racial slur but offered no other evidence to show the arrest was racially

21    discriminatory in violation of the Fourteenth Amendment).  Plaintiff had been stopped for

22    legitimate law enforcement reasons, the expired car registration and for reports of a suspicious

23    vehicle that was driving in the area.  She was taken into custody after lunging at Defendant with

24    papers which obscured his view of her and because she failed to comply with orders.  Because

25    Plaintiff presents insufficient evidence to support her Fourteenth Amendment claim, summary

26    judgment is granted in favor of Defendant.

27    ///

28    ///

1    ### C. Qualified Immunity

2    Defendant also asserts that the Court should grant summary judgment on the basis of

3    qualified immunity.  However, the Court need not reach this argument, based upon the above

4    determination regarding the undisputed facts in this case.

5    **III.    Defendant's Motion for Partial Judgment on the Pleadings**

6    Because the Court rules that summary judgment should be granted on Plaintiff's claims,

7    and because no claims remain in the case, the Court denies Defendant's Motion for Partial

8    Judgment on the Pleadings as moot.

9    **IV.    Defendant's Motion for Sanctions**

10    Defendant Mora moves for sanctions against Plaintiff Purnell pursuant to Fed. R. Civ. P.

11    11.  (Doc. 29.)  Defendant argues that that there is no evidentiary support for the factual

12    allegations in the FAC.  (*Id.* at 6.)  Defendant argues that the FAC is frivolous "and was filed

13    solely for the improper purpose of harassing defendant."  (*Id.*)

14    The Court finds that sanctions pursuant to Rule 11 are inappropriate here.  Defendant's

15    disagreement with the facts presented in Plaintiff's FAC are more appropriately raised in

16    Defendant's motion for summary judgment, as he has done, rather than in a motion for sanctions.

17    The parties have presented different versions of events to the Court, which does not, in itself,

18    demonstrate that Plaintiff's complaint is being presented for any improper purpose, frivolous,

19    legally unreasonable or without factual foundation as required by Rule 11.  The Court does not

20    find that Plaintiff made filings that are "both baseless and made without reasonable and

21    competent inquiry."  *Buster*, 104 F.3d 1190.

22    Further, Defendant has presented no evidence of bad faith on the part of Plaintiff that

23    would support the imposition of sanctions.  *Fink*, 239 F.3d at 994 (holding that an attorney's

24    "reckless misstatements of law and fact, when coupled with an improper purpose, such as an

25    attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in

26    another case, are sanctionable under a court's inherent power.")  Plaintiff's unsupported assertions

27    are not sufficient to demonstrate the required bad faith necessary to warrant the imposition of

28    sanctions.  The Court does not find it necessary at this time to impose any sanctions pursuant to

Local Rule 110.

Accordingly, with respect to Defendant's request for sanctions, Defendant has not met the standard for the imposition of sanctions pursuant to Rule 11.

<u>**CONCLUSION AND RECOMMENDATION**</u>

For the reasons stated, it is HEREBY RECOMMENDED as follows:

1. Defendant's motion for summary judgment be GRANTED.

2. Defendant's motion for partial judgment on the pleadings be DENIED as moot.

3. Defendant's motion for sanctions be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __September 11, 2025__          ___/s/ Barbara A. McAuliffe___
                                        UNITED STATES MAGISTRATE JUDGE

23